IN THE

# SUPREME JUDICIAL COURT

IN

## THE COUNTY OF OXFORD, MAY TERM, 1829.

WESTON J. was not present at this term.

## PEASE & AL. *vs.* GIBSON.

Where the owner of land sold, by deed, all the timber trees standing thereon, and in the same deed gave to the vendee two years within which to take off the timber ; it was held that this was a sale of only so much of the timber as the vendee might take off in the two years ; and that an entry by him after that period was a trespass.

And although, after the expiration of the two years, the land was sold to a stranger, with a reservation in the deed of whatever rights the vendee of the timber might have ; yet this reservation, it was held, neither gave any new effect to the contract, nor any new license to the vendee.

Whether a license to cut timber on the land of the grantor is assignable,—*quære.*

IN this case, which was trespass for breaking and entering the plaintiff's close in *Brownfield*, and cutting his timber trees, the defendant pleaded the general issue ; and a license, given *Dec.* 7, 1819, by one *James Osgood*, who was then seised in fee of the close, to one *Joseph Howard ;* and a conveyance *Nov.* 24, 1824, by *Howard*, of all his interest therein, to one *Jackson Wood ;* and alleged that *Joseph Howard* and one *Moses Howard*, *Oct.* 11, 1825, being seised in fee of the premises, conveyed them to the plaintiffs, who, on

11

the same day, gave license to *Wood*, under whom the defendant justified as his servant. Which was traversed, and issue was joined thereon.

To prove the issue on their part, the plaintiffs introduced a deed with general warranty, dated *Oct.* 11, 1825, from *Joseph* and *Moses Howard*, conveying to the plaintiffs the *locus in quo*, " reserving all the privileges to *Jackson Wood* for the timber sold him, as per *James Osgood's* obligation to me in *Wood's* possession." And they proved the cutting of the timber as late as the year 1826, as alleged in the writ.

The defendant relied wholly on the obligation alluded to in the plaintiff's deed, which was under seal, and in the following terms : " I hereby agree to let *Joseph Howard* Esq. have all the pine trees fit for mill-logs on my land in *Brownfield*, beginning at Capt. *Abner Sawyer's* corner, on *Brownfield* line, thence running on *Sawyer's* line, and by said line to the county road, thence on said road to the ten-mile-brook, thence up the ten-mile-brook to the town line of *Brownfield*. Said *Howard* to have the timber on the north side of said brook, and on the southwest side of the *Kezer*-hills. Said *Howard* not to cut any timber on said *Kezer*-hills, nor on the side of said hills, the same being reserved by the subscriber. Said *Howard* to have two years from date to take off said timber. I acknowledge one hundred and fifty dollars for the same. *Brownfield, Dec.* 7, 1819. *James Osgood.*" It was assigned to *Wood* by the following indorsement.—" This may certify that I have sold to *Jackson Wood* all my right and interest in and to the within obligation, to have the same privilege of cutting and hauling the pine trees that I have. *Nov.* 24, 1824. *Joseph Howard.*"

The defence was overruled by *Parris J.* before whom the cause was tried; and a verdict was taken for the plaintiffs, subject to the opinion of the court upon the effect of the instrument adduced.

*Holmes* and *Chase*, for the defendant, argued that it was an absolute sale, of all the timber on the land, and not merely of such as the vendee could get off in two years ; and that the limitation of that term of time was only an indication of the period within which he might enter and carry away timber without the payment of damages,

After its expiration, they contended, he might still take away his timber, subject to any reasonable claim of the owner of the soil, for damages thereby occasioned. And such was the construction given to the instrument by *Howard*, in the deed to the plaintiffs. The reservation in this deed was the creation of a new lease, and operated for the benefit of the party in whose favor it was created. *Emery v. Chase*, 5 *Greenl.* 232.

*Greenleaf* and *Deblois* for the plaintiffs.

MELLEN C. J. delivered the opinion of the Court at the ensuing *May* term in *Lincoln*.

In this case the defendant has pleaded the general issue and also a license. Under the general issue he has not offered any proof of title to the *locus in quo*, as he might have done by law; and the trespass alleged having been proved, we need not take any further notice of the first plea. Under the special plea in bar, no proof can avail the defendant but proof of a license. *Johnson v. Carter*, 16 *Mass.* 443. The very design of special pleading is to bring the question for trial to a point, and direct the evidence to that point. We need not, therefore, inquire whether there is any legal evidence of a sale, as has been contended in the argument. The only evidence of the license, offered by the defendant, was the written license to *Howard*; but that was only a license to enter and cut timber within two years from the date; and of course it expired, by its own limitation, on the 7th of *Dec.* 1821; and it is admitted that the trespass alleged and proved in this action was committed as late as the year 1826. It cannot therefore justify the trespass, even if a license of this kind was by law assignable, which is by no means admitted as a sound principle. The counsel for the defendant has, however, relied upon another piece of evidence, which was introduced by the plaintiffs, as being proof of the alleged license. It is a clause in the deed from *Joseph* and *Moses Howard* abovementioned, dated *Oct.* 11, 1825, in these words: " reserving all the privileges to *Jackson Wood* for the timber sold him as per *James Osgood's* obligation to me in *Wood's* possession." It is contended that this

clause amounts to a new license, which justifies the trespass alleged; but the license pleaded is one from the plaintiffs and not from the *Howards.* But it is contended farther, that the acceptance of this deed from the *Howards,* containing the above clause, amounts to a license from the plaintiffs themselves, and thus supports the plea. All this may be ingenious reasoning, but it is in our opinion by no means conclusive. If at the time the deed was made, *Jackson Wood* had no existing rights under the assignment of the limited license given by *Osgood* to *Howard,* then there was nothing reserved by the beforementioned clause, and there was nothing on which it could have any legal operation; and we are well satisfied that there was not. The license had expired almost four years before. If the parties to that deed entertained erroneous ideas on the subject of the license, that circumstance cannot affect their legal rights, nor the rights of other persons. The clause might have been inserted by way of caution; at any rate, it did not produce any change in the existing legal relations of all concerned. But if we were at liberty to consider a sale of the timber as proof of the license pleaded, still our opinion would be that it was only a conditional sale; that is, a sale of the timber that *Howard* or his assignee should cut and carry away within the two years mentioned in the license. To admit the construction given by the defendant's counsel, and consider such a permission as a sale of the trees, to be cut and carried away at the good pleasure of the purchaser, and without any reference to the limitation, in point of time, specified in the permit, would be highly injurious in its consequences. It would deprive the owner of the land of the privilege of cultivating it and rendering it productive, thus occasioning public inconvenience and injury; and in fact, it would amount to an indefinite permission. The purchaser, on this principle, might, by gradually cutting the trees and clearing them away, make room for a succeeding growth, and before he would have removed the trees standing on the land at the time of receiving such a license or sale, others would grow to a sufficient size to be useful and valuable; and thus the owner of the land would be completely deprived of all use of it. Principles leading to such consequences as we have mentioned, cannot receive the sanction of this

court.   We are all of opinion that the instructions of the judge were correct ; and accordingly there must be

*Judgment on the verdict.*