# Commonwealth, Appellant, *v.* Howells.

*Criminal law—Indictment—Sufficiency of indictment.*

Indictments require only certainty to a common intent in general, and not certainty in every particular. That which is apparent to the court and appears from a necessary implication need not be averred. It is sufficient that the charge be stated with so much certainty that the defendant may know what he is called on to answer, and that the court may know how to render the proper judgment thereon. Overnice exceptions are not to be encouraged, especially in cases that do not touch the life of the defendant.

*Criminal law—Forgery of labels—Indictment.*

An indictment for forging labels and wrappers of a mechanic or manufacturer, which avers that the labels and wrappers in question were used on medicines, "manufactured and sold by the company," contains a sufficient averment as to the owner of the labels and wrappers being "a manufacturer," inasmuch as the averment necessarily implies that the company by which the medicines were manufactured is a manufacturer.

An indictment for forging labels and wrappers averred an intent to use the labels and wrappers to aid in "vending the said goods, wares and merchandise in imitation of and intended to resemble and to be sold for the goods, wares and merchandise of the company aforesaid." There was no antecedent reference in the indictment to the goods manufactured by the defendant. *Held,* that the words "the said" should be considered either as mere surplusage, or as referring to the goods of the company, and that in neither case was there anything in them to vitiate the indictment.

An indictment for forging a label and wrapper which charges the possession of a forged label or wrapper substantially in the language of the act, and which charges the intent literally in the language of the act, is sufficient.

In an indictment for forging a label or wrapper it is unnecessary to specify the kind of merchandise on which the stamp, label or wrapper is usually affixed or used.

An indictment for forging labels and wrappers is not improper because in the first count it charges possession of genuine stamps, labels and wrappers with intent to use them to aid in the sale of goods in imitation of manufacturers' goods, and in the second count, possession of counterfeit stamps, labels and wrappers with the like intent. The statute defines two offenses, and the two counts merely present their different phases.

Argued Jan. 21, 1901. Appeal, No. 45, Jan. T., 1901, by plaintiff from order of Q. S. Luzerne Co., June T., 1900, No. 312½, quashing indictment in case of Commonwealth v. M. H. Howells. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, and W. D. PORTER, JJ. Reversed.

Indictment for forging labels and wrappers.

The indictment was as follows:

" The grand inquest of the commonwealth of Pennsylvania, inquiring for the county of Luzerne, upon their respective oaths and affirmations, do present that M. H. Howells, yoeman, late of said county, on February 26, in the year of our Lord A. D. 1900, at the county aforesaid, and within the jurisdiction of this court, unlawfully did have in his possession certain printed labels and wrappers, a more particular description whereof is to the jurors unknown, usually affixed by the Peruna Drug Manufacturing Company, a corporation incorporated under the laws of the state of Ohio, to and used on the wares and merchandise to wit: patent medicines manufactured and sold by the company aforesaid, with intent to use the aforesaid labels and wrappers for the purpose of aiding and assisting him, the said Howells in vending the said goods, wares and merchandise in imitation of and intended to resemble and to be sold for the goods, wares and merchandise of the company aforesaid, contrary to the form of the act of the general assembly in such cases made and provided, and against the peace and dignity of the commonwealth of Pennsylvania.

" And the grand inquest aforesaid, inquiring as aforesaid upon their respective oaths and affirmations, do further present that the said M. H. Howells, on the day and year aforesaid, at the county aforesaid and within the jurisdiction of this court, unlawfully did have in his possession a certain representation, similitude, copy and imitation of the private stamp, wrapper and label usually affixed by the drug company aforesaid to and used on the goods, wares and merchandise manufactured and sold by the company aforesaid, with intent to use the said stamp, labels and wrappers for the purpose of aiding and assisting him, the said Howells in vending in ways to the jurors unknown, goods, wares and merchandise in imitation of and intended to resemble and to be sold for the goods, wares and merchandise of the aforesaid Peruna Drug Manufacturing Company, contrary to the form of the act of general assembly in such case made and provided and against the peace and dignity of the commonwealth of Pennsylvania."

The defendant moved to quash the indictment for the following reasons :

As to the first count.

1. It does not charge an offense.

This count does not assert that defendant used or intended to use the "printed labels and wrappers" in vending "any goods, wares and merchandise in imitation of or intended to resemble and to be sold for the goods, wares and merchandise" of the Peruna Drug Manufacturing Company, but asserts that these labels and wrappers were used to aid in selling the Peruna Drug Company's own goods, wares and merchandise.

The word "said" as used must refer to the only goods, wares and merchandise previously mentioned, namely those of said drug company.

2. The goods, wares and merchandise must be definitely described and set forth.

As to the second count.

1. In order to come within the law the indictment must allege that the "representation, similitude, copy and imitation of the private stamp, wrapper, copy and label usually affixed by the said drug company to and used by such manufacturer on or in the sale of any goods, wares and merchandise.

It alleges that these labels were used on goods, wares and merchandise manufactured and sold by the company.

2. The goods, wares and merchandise must be specifically set forth. The indictment is therefore wholly bad for uncertainty.

The court quashed the indictment.

*Error assigned* was the order to quash the indictment.

*M. J. Mulhall*, assistant district attorney, with him *James L. Lenahan* and *Willard, Warren & Knapp*, for appellant.—The indictment was sufficient: Lutz v. Com., 29 Pa. 441; Edge v. Com., 7 Pa. 275; Sherban v. Com., 8 Watts, 214; Com. v. Keenan, 67 Pa. 203; Respublica v. Cleaver, 4 Yeates, 69; Com. v. Wood, 2 Pa. Superior Ct. 42.

*John M. Garman*, for appellee.

OPINION BY SMITH, J., October 14, 1901:

Section 174 of the penal code of 1860, under which the in-

dictment is framed, provides that " if any person shall have in his possession any die, plate, engraving or printed label, stamp or wrapper, or any representation, likeness, similitude, copy or imitation of the private stamp, wrapper or label usually affixed by any mechanic or manufacturer to and used by such manufacturer or mechanic on or in the sale of any goods, wares or merchandise, with intent to use or sell the said die, plate, engraving or printed stamp, label or wrapper, for the purpose of aiding or assisting, in any way whatever, in vending any goods, wares or merchandise, in imitation of or intended to resemble and to be sold for the goods, wares or merchandise of such mechanic or manufacturer, such person shall be guilty," etc.

The first count of the indictment (with words not material to a clear expression of its allegations, and therefore omitted here) charges substantially that the defendant unlawfully had in his possession certain printed labels and wrappers, usually affixed by the Peruna Drug Company to and used on the wares and merchandise, to-wit: patent medicines manufactured and sold by the company aforesaid, with intent to use the aforesaid labels and wrappers for the purpose of aiding and assisting the defendant in vending the said goods, wares and merchandise in imitation of and intended to resemble and be sold for the wares and merchandise of the said company.

With respect to the essentials of an indictment, the code of 1860 provides that " every indictment shall be deemed and adjudged sufficient and good in law which charges the crime substantially in the language of the act of assembly prohibiting the crime and prescribing the punishment, if any there be, or, if at common law, so plainly that the nature of the offense charged may be easily understood by the jury."

Before the enactment of this provision, the Supreme Court had thus laid down the principles on which the sufficiency of an indictment should be determined:

"Indictments require only the same certainty as declarations ; namely, certainty to a common intent in general, and not certainty in every particular, as is required in pleading an estoppel. It is a rule that that which is apparent to the court, and appears from a necessary implication, need not be averred. It is sufficient in indictments that the charge be stated with so much certainty that the defendant may know what he is called

on to answer, and that the court may know how to render the proper judgment thereon.   Overnice exceptions are not to be encouraged, especially in cases that do not touch the life of the defendant:" Sherban v. Com., 8 Watts, 212.   "We must take some things to be true, from their resulting by irresistible necessity and conclusion from others :" Edge v. Com., 7 Pa. 275.

These principles are illustrated in Lutz v. Com., 29 Pa. 441, a homicide case, in which the exceptions "touched the life of the defendant."   There, it was not directly averred, in the indictment, that the person upon whom the wound was inflicted by the defendant died of the wound.   The Supreme Court, however, held that this sufficiently appeared by implication, and sustained the indictment, while conceding that "it trenches hard on those rules of certainty which obtain in criminal pleading."   Further authorities on this point are referred to, and the question discussed, in Com. v. Swallow, 8 Pa. Superior Ct. 539.   And later cases repeat and affirm in clear and unequivocal terms this principle of criminal pleading: Com. v. Mentzer, 162 Pa. 646 ; Com. v. Kolb, 13 Pa. Superior Ct. 347 ; Com. v. New Bethlehem Boro., 15 Pa. Superior Ct. 158 ; Com. v. Sober, 15 Pa. Superior Ct. 520.

As to the first count of the indictment before us, the averment that the labels and wrappers were used on medicines "manufactured and sold by the company," necessarily implies that the company by which the medicines are manufactured is a manufacturer.   This, with the description of the labels and wrappers as labels and wrappers usually affixed by the company to and used on the medicines which it manufactures and sells, meets all the requirements on these points.

The averment as to the defendant's intent presents no real difficulty.   It charges an intent to use the labels and wrappers to aid in " vending the said goods, wares and merchandise in imitation of and intended to resemble and be sold for the goods, wares and merchandise of the company aforesaid."   Here the words " the said " have no apparent meaning.   If they may be construed as having any application, it is to goods, wares and merchandise in imitation of those of the Peruna Company, and to nothing else.   But there is no antecedent reference to such goods as these, to which they might relate ; the only goods, wares and merchandise previously mentioned are those de-

scribed as actually manufactured and sold by the Peruna Company. These words, therefore, being used only in connection with imitations, can have no relation to the genuine goods. They may be dismissed as surplusage, without affecting the meaning of the averment. They may, perhaps, be designed to mean goods of the description of those manufactured and sold by the Peruna Company—" to wit: patent medicines." But, with a meaning or with none, there is nothing in them to vitiate the indictment.

The second count charges the possession of an imitation of the stamp, wrapper and label, etc., in the language of the statute, with the exception of describing them as " used on the goods, wares and merchandise manufactured and sold by the company aforesaid," while the words of the statute, on this point, are, " used by such manufacturer or mechanic on or in the sale of any goods, wares or merchandise." This is obviously a distinction without a difference. If a label is used on goods manufactured and sold by the manufacturer, they are unquestionably used by the manufacturer on or in the sale of the goods. The possession is charged substantially in the language of the act of assembly, and so plainly that its nature cannot be misunderstood. The intent is charged literally in the language of the statute.

It is unnecessary to specify the kind of merchandise on which the stamp, label or wrapper is usually affixed or used. Any stamp, label or wrapper, used on any goods, wares or merchandise, is within the statutory prohibition. The description in the indictment follows the language of the statute. If, in any case, this is not thought sufficiently explicit, it may be ground for an application for a bill of particulars, but it cannot be deemed a sufficient reason for quashing the indictment.

The statute defines two offenses: (1) Possession of genuine stamps, labels, wrappers, etc., with intent to use them to aid in the sale of goods in imitation of the manufacturer's goods; (2) Possession of counterfeit stamps, labels, wrappers, etc., with the like intent. The first count of the indictment charges the former offense, the second count the latter. Both counts are certain to a common intent in general. Each charges the offense in substantially the language of the act of assembly; so plainly that its nature may be easily understood by the jury;

and with so much certainty that the defendant may know what he is called on to answer, and the court may know how to render the proper judgment thereon. More than this is not required. The case belongs to the class in which overnice exceptions are not to be encouraged. Its two counts present different phases of the statutory offense,—a practice in strict conformity with well established principles and sustained by numerous decisions of the Supreme Court and of this court: Commonwealth v. Lewis, 6 Pa. Superior Ct. 610.

The judgment of the court below is reversed, the indictment is reinstated and a procedendo ordered.

W. D. Porter, J., dissents.